**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**GREG SOULLIERE,**

      **Plaintiff,**

v.                                                                    **Case No: 8:13-CV-2860-T-27AEP**

**CENTRAL FLORIDA INVESTMENTS,**
**INC., WESTGATE RESORTS LTD,**
**WESTGATE VACATION VILLAS, LLC,**
**WESTGATE VACATION VILLAS HOA**
**and CENTRAL FLORIDA**
**INVESTMENTS RESORTS**
**MANAGEMENT, INC.,**

      **Defendants.**

_____/

## ORDER

**BEFORE THE COURT** is Plaintiff's Motion for Summary Judgment and Supporting

Memorandum of Law (Dkt. 43) and Concise Statement of Undisputed Facts in Support of Plaintiff's

Motion for Summary Judgment (Dkt. 44), Defendants' Motion for Summary Judgment (Dkt. 45) and

Statement of Material Facts in Support of Their Motion for Summary Judgment (Dkt. 46), and the

respective responses in opposition (Dkts. 54, 55, 57).  Upon consideration, Defendants' Motion is

GRANTED in part and DENIED in part and Plaintiff's Motion is DENIED.

## I.      BACKGROUND

Plaintiff brings this action alleging violations of the Telephone Consumer Protection Act, 47

U.S.C. § 227 *et seq.* ("TCPA") arising out of telephone calls made by Defendant CFI Resorts

Management, Inc. ("CFIRM") to Plaintiff's cell phone using an automatic telephone dialing system

("ATDS"), allegedly without prior express consent.  The phone calls were made in an attempt to collect past due maintenance and tax payments on Plaintiff's timeshare account (Dkt. 46-3, ¶ 34-36). In addition to CFIRM, Plaintiff sues four other defendants.

On October 21, 2004,[1] Plaintiff purchased a timeshare interest at Defendant Westgate Vacation Villas, LLC ("Westgate Villas")  from the previous owners on ebay (Dkt. 46-3, ¶ 13).  With the ownership of this interest came an obligation to pay maintenance and taxes to Defendant Westgate Homeowner's Association, Inc. ("Westgate HOA") (Dkt. 46-1, ¶ 24).  Westgate HOA contracted with CFIRM for the management of the property and collection of unpaid maintenance and taxes (*Id.*). CFIRM is owned 100% by Defendant Central Florida Investments, Inc. ("CFI") (*Id.*, ¶ 9).[2]  CFIRM is the only named Defendant that makes telephone calls to timeshare owners (*Id.*, ¶ 10).  CFIRM's policies and procedures regarding phone calls require representatives to document  all phone calls to owners, to keep detailed notes of all communications contemporaneously with the making of phone calls, or immediately thereafter, and to report comments on every aspect of the communication, including when the owner requests not to be called (*Id.*, ¶¶ 15-17).  CFIRM maintained a log of all communication and calls with Plaintiff (*Id.*, ¶ 18).

---

[1] Plaintiff states that he purchased the timeshare on December 2, 2004 (Dkt. 43-1, ¶ 8).  This is contradicted by the Florida Department of Revenue Return for Transfers of Interest in Real Property (Dkt. 46-3 at 15) and other evidence.  December 2, 2004 appears to be the date Plaintiff sent CFIRM the registered deed transferring ownership of the timeshare to him (*see* Dkt. 46-3 at 30; Dkt. 43-1, ¶ 12). The purchase date does not appear to be relevant to the issues before the Court.

[2] CFI is the parent company of all the Westgate entities and owns 99% of Westgate Resorts Ltd. ("Westgate").  Westgate is a timeshare resort operator which owns a number of timeshare resorts throughout the country operating under the Westgate umbrella.  Westgate Villas is the developer of the Westgate Vacation Villas timeshare resort in Kissimmee, Florida.  Westgate HOA is the homeowner's association for Westgate Villas. CFIRM is a management company which handles the day-to-day management functions of Westgate HOA, as well as other Westgate associations.  (Dkt. 46-1, ¶¶ 5-8).

On December 2, 2004, a male individual[3] contacted CFIRM via phone, inquiring about changing the owner's name for the timeshare account (*Id.*, ¶ 28, Ex. A).  On December 6, 2004, CFIRM received a facsimile from Plaintiff enclosing a copy of the recorded Quit Claim Deed (*Id.*, ¶ 29, Ex. A).  On December 10, 2004, a male individual called CFIRM to ask about the status of the name change (*Id.*, ¶ 30, Ex. A).  On December 22, 2004, the individual again called CFIRM to obtain account information (*Id.*, ¶ 31).  What happened during this call is disputed.  Defendants contend that during the December 22, 2004 call, Plaintiff provided his business and cellular phone numbers *(Id.)*.  Defendants also contend he confirmed his cell phone number on February 7, 2011 (*Id.*, ¶ 37).  Plaintiff claims he never provided his cell phone number to Defendants (Dkt. 43-1, ¶ 13).[4]  CFIRM's call log from December 22, 2004 identifies Plaintiff's home and cell phone numbers (Dkt. 46-1, Ex. A).[5]  And the call log from February 7, 2011 also identifies Plaintiff's cell phone number (Dkt. 46-1, Ex. B).  CFIRM asserts, and Plaintiff does not dispute, that it made no independent attempts to obtain Plaintiff's contact information (Dkt. 46-3, ¶ 31).  There are no other records or documentation of these calls.

## II.    STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A genuine factual dispute exists only if a reasonable fact-finder 'could find by a preponderance of the evidence that the

---

[3] The call logs identify the caller as "MR."  Plaintiff does not directly dispute that the caller is him, and as discussed later, it is reasonable to infer that it is.

[4] Although Plaintiff's Affidavit affirmatively states he never provided Defendants his cell phone number, he testified in his deposition only that he could not recall.

[5] The call log lists Plaintiff's cell phone number, (727) 418-1475, as his "BUS" number.

[non-movant] is entitled to a verdict.'" *Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1300 (11th Cir.

2012) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). A fact is material if it

may affect the outcome of the suit under the governing law. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642,

646 (11th Cir. 1997).

The moving party bears the initial burden of showing the court, by reference to materials on

file, that there are no genuine disputes of material fact that should be decided at trial. *Hickson Corp.*

*v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477

U.S. 317, 323 (1986)). If the moving party fails to demonstrate the absence of a genuine dispute, the

motion should be denied. *Kernel Records*, 694 F.3d at 1300 (citing *Adickes v. S.H. Kress & Co.*, 398

U.S. 144, 160 (1970); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 606-08 (11th Cir. 1991)). The

nonmoving party must "go beyond the pleadings," and designate specific facts showing that there is

a genuine dispute. *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593-94 (11th Cir. 1995) (citing

*Celotex*, 477 U.S. at 324). A mere scintilla of evidence in the form of conclusory allegations, legal

conclusions, or evidence that is merely colorable or not significantly probative of a disputed fact

cannot satisfy a party's burden. *Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991); *Kernel*

*Records*, 694 F.3d at 1301.

The evidence presented must be viewed in the light most favorable to the nonmoving party.

*Ross v. Jefferson Cnty. Dep't of Health*, 701 F.3d 655, 658 (11th Cir. 2012). If there is a conflict

between the parties' allegations or evidence, the nonmoving party's evidence is presumed to be true.

*Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1164 (11th Cir. 2003). "Although all justifiable

inferences are to be drawn in favor of the nonmoving party," *Baldwin Cnty. v. Purcell*, 971 F.2d 1558,

1563-64 (11th Cir. 1992), "inferences based upon speculation are not reasonable." *Marshall v. City*

*of Cape Coral*, 797 F.2d 1555, 1559 (11th Cir. 1986); *Ave. CLO Fund, Ltd. v. Bank of Am., N.A.*, 723

F.3d 1287, 1294 (11th Cir. 2013). If a reasonable fact finder evaluating the evidence could draw more

than one inference from the facts, and if that inference introduces a genuine dispute over a material

fact, the court should not grant summary judgment. *Samples ex rel. Samples v. City of Atlanta*, 846

F.2d 1328, 1330 (11th Cir. 1998). However, if the nonmovant's response consists of nothing more

than a repetition of conclusory allegations, summary judgment is not only proper, but required. *Morris

v. Ross*, 663 F.2d 1032, 1034 (11th Cir. 1981), *cert. denied*, 456 U.S. 1010 (1982).

The standard for cross motions for summary judgment is the same. *See United States v.

Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984) ("Cross-motions for summary judgment will not, in

themselves, warrant the court in granting summary judgment unless one of the parties is entitled to

judgment as a matter of law on facts that are not genuinely disputed."); *Perez-Santiago v. Volusia

Cnty.*, No. 6:08-cv-1868-Orl-28KRS, 2010 WL 917872, at *2 (M.D. Fla. Mar. 11, 2010) (quoting

*Latin Am. Music Co. v. Archdiocese of San Juan of the Roman Catholic & Apostolic Church*, 499

F.3d 32, 38 (1st Cir. 2007)) (internal quotation marks omitted). "Cross motions for summary

judgment are to be treated separately; the denial of one does not require the grant of another." *Id.* at

*2 (citations and internal quotation marks omitted). When considering cross-motions for summary

judgment, the Court must "consider and rule upon each party's motion separately and determine

whether summary judgment is appropriate as to each under the Rule 56 standard." *Monumental

Paving & Excavating, Inc. v. Pa. Mfrs.' Ass'n Ins. Co.*, 176 F.3d 794, 797 (4th Cir. 1999) (citations

omitted).

## III.   DISCUSSION

Defendants move for summary judgment on the following grounds: Plaintiff does not have

standing because he is not the subscriber of the cell phone service; assuming Plaintiff does have standing, he consented to receive autodialed calls from CFIRM and never revoked his consent; and Defendants CFI, Westgate, Westgate Villas, and Westgate HOA cannot be held liable for the calls made by CFIRM.  Plaintiff cross moves for summary judgment contending that he never provided consent to call his cell phone, repeatedly told CFIRM to stop calling, and that the non-calling Defendants are vicariously liable for the calls made by CFIRM.

The TCPA prohibits the use of an automatic telephone dialing system to call a telephone number assigned to a cellular telephone service, without the prior express consent of the "called party."  47 U.S.C. § 227(b)(1)(A)(iii).  The burden is on the creditor to demonstrate it obtained prior express consent because it is in the best position to have records showing such consent.  *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 F.C.C. Rcd. 559, 565 (2008).  Therefore, Plaintiff need only show that Defendants made a call to a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice.  *See* 47 U.S.C. § 227(b)(1)(A)(iii).[6]

## A.    Standing

Defendants argue that Plaintiff does not have standing because he was not the subscriber of

---

[6] § 227(b)(1)(A)(iii) provides, in pertinent part:

It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—

(A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—
. . .

(iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call . . . .

the cell phone service, and therefore not the "called party" within the meaning of the TCPA.  They rely on the Eleventh Circuit's opinion in *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1251 (11th Cir. 2014) which held that "called party" means the subscriber of the cell phone service. Plaintiff responds that he was the subscriber of the cell phone number at the time CFIRM made the calls at issue notwithstanding that he was not charged for the calls, also relying on *Osario*.[7]

The Eleventh Circuit has held that "called party," for purposes who can give "prior express consent" in the context of § 227(b)(1)(A)(iii), means the subscriber to the cell phone service.  *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1251 (11th Cir. 2014); *Breslow v. Wells Fargo Bank, N.A.*, 755 F.3d 1265, 1267 (11th Cir. 2014). In doing so, the court in *Osorio* rejected the defendant's position that "called party" means the intended recipient.  *Osorio*, 746 F.2d at 1252.  *Osario* did not address the issue of who has standing to bring a claim under this section.

Generally, the subscriber is the person who is obligated to pay for the telephone or needs the line in order to receive other calls and has the authority to consent to receive calls that would otherwise be prohibited by the statute.  *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 639, 641 (7th Cir. 2012); *also Osario*, 746 F.3d at 1251 (citing *Soppet* with approval).[8]  However, in some cases the subscriber transfers primary use of the telephone to another, as Plaintiff's employer did here. In such a case, the primary user may be the subscriber's agent, thereby permitting the primary user to consent to being called.  *See Osario*, 746 F.3d at 1252.  However, *Osario* does not necessarily stand for the proposition that the primary user must be the subscriber's agent in order to consent.  The

---

[7] In his affidavit, however, Plaintiff states that he is responsible for the cell phone bill (Dkt. 43-1, ¶ 4), which is inconsistent with his deposition testimony that his employer pays his cell phone bill (Dkt. 46-5 at 53:3-8; 56:2-8).

[8] In *Osario*, the subscriber was the cell phone account holder. *Osario*, 746 F.3d at 1247.

court did not need to address that issue because the number at issue belonged to the subscriber, and there is no indication from the opinion that he transferred the number to another person for primary use.   Rather, the other individual merely provided the subscriber's number as one of her contact numbers.   *Id.* at 1247.

As at least one district court has recognized, *Osario* and *Breslow* may have held that a current subscriber qualifies as a "called party," to the exclusion of a prior subscriber who had authorized the call, but they did not address whether the term also covers a cell phone's current primary user. *Gesten v. Stewart Law Grp.*, LLC, No. 14-61650-CIV, 2014 WL 7243330, at *3 (S.D. Fla. Dec. 19, 2014).

Moreover, several district courts within the Eleventh Circuit, and in other circuits, have construed the statute to confer broader standing than that argued by Defendant.[9]   Defendants have not cited binding authority to contrary.   Those district courts have held that the primary or regular user of the cell phone has standing.   Indeed, the TCPA simply states that "a person or entity" can bring such a claim. 47 U.S.C. § 227(b)(3).   This conclusion finds further support from the fact that the

---

[9] Notably, a number of district courts have held that a cell phone user has standing to assert a cause of action under the TCPA, even if he or she was not the "called party" or responsible for the bill. *See Cellco P'ship v. Plaza Resorts Inc.*, No. 12-81238-CIV, 2013 WL 5436553, at *4 (S.D. Fla. Sept. 27, 2013) ("After carefully reviewing the text of the TCPA and its legislative intent, the Court concludes that a cause of action for a violation of the statute inures either to the subscriber of the telephone or the person to whom the subscriber provides the telephone for that person's primary use."); *Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674, 683 (S.D. Fla. 2013), reconsideration denied (May 30, 2013) (plaintiff had *standing* even though his wife paid the cell phone bills); *Page v. Regions Bank*, 917 F. Supp. 2d 1214, 1219 (N.D. Ala. 2012) ("Page is the 'called party' because he was the 'subscriber' to the cellular telephone in question. Page is the regular user and carrier of the cellular telephone, as well as the person who needs the telephone line to receive other calls") (collecting cases); *Gesten v. Stewart Law Grp., LLC*, No. 14-61650-CIV, 2014 WL 7243330, at *3 (S.D. Fla. Dec. 19, 2014) ("As *Manno* and *Page* observe, Plaintiff need not be a 'called party' to have standing."); *Olney v. Progressive Cas. Ins. Co.*, 993 F. Supp. 2d 1220, 1226 (S.D. Cal. 2014) ("regular user of a cellular telephone has standing to bring a claim under the TCPA, regardless of whether he is responsible for paying the bill."); *Swope v. Credit Mgmt., LP*, No. 4:12CV832 CDP, 2013 WL 607830, at *3 (E.D. Mo. Feb. 19, 2013) ("the regular user and carrier of the cell phone that is at issue in this case has standing").

TCPA is designed to protect <u>users</u> of telephones from nuisance calls and from unwarranted invasions of their privacy.  *See* Pub.L. 1–2–243, § 2, ¶¶ 12–14, 105 Stat. 2394 (1991) (banning automated or prerecorded telephone calls is the only effective means of protecting telephone consumers from "this nuance and invasion of privacy"; automated or prerecorded telephone calls "are a nuisance, are an invasion of privacy").  Moreover, in *Osario*, the court also held that a plaintiff need not prove he was charged individually for each autodialed call to his cell phone.  *Id.* at 1258.

There are some inconsistencies in the evidence regarding who pays Plaintiff's cell phone bill. Regardless of whether Plaintiff's employer, Bill Maher Chevrolet is the subscriber in that it owns Plaintiff's cell phone number and pays the bill, Plaintiff is not precluded from having standing as it is not disputed that he was the primary or regular user of his cell phone and received the calls  at issue.[10]

### B.    Plaintiff's Affidavit

Defendants request that Plaintiff's Affidavit be stricken as a sham because it contradicts prior deposition testimony without explanation.[11]  Defendants' request is denied.  With the exception of Plaintiff's answer as to who pays his cell phone bill, his Affidavit does not flatly contradict earlier clear deposition testimony.  *Van T. Junkins & Assocs., Inc. v. U.S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir. 1984) ("When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony."); *Faulk*

---

[10] Defendants' cursory argument, made in a footnote, that Plaintiff lacks standing because his cell phone is a business telephone is also not persuasive as Defendants cite to no authority supporting it.

[11] Although Defendants' request for relief in its response is improper, it will be considered.  *See* Fed. R. Civ. P. 7(b) (All requests for relief from, or action by, the court must be in the form of a motion and comply with the Local Rules, included Rule 3.01(g).).

*v. Volunteers of Am.*, 444 Fed. App'x 316, 318 (11th Cir. 2011).  Although his affidavit provides more specific answers to certain questions, it is not necessarily inconsistent with, or contradictory to, his deposition testimony.  The Eleventh Circuit has cautioned that "the court must be careful to distinguish 'between discrepancies which create transparent shams and discrepancies which create an issue of credibility or go to the weight of the evidence.'" *Faulk*, 444 Fed. App'x at 318 (quoting *Tippens v. Celotex Corp.*, 805 F.2d 949, 953 (11th Cir. 1986)).  And, as discussed above, whether Plaintiff pays his cell phone bill or his employer would not change the conclusion that he has standing.

### C.    Consent

Plaintiff contends that Defendants have failed to demonstrate they obtained prior express consent.  Defendant CFIRM contends it is undisputed that it did.  CFIRM has the burden of showing it obtained prior express consent.  23 F.C.C. Rcd. at 565; *see Osorio*, 746 F.3d at 1253 ("To fall within § 227(b)(1)(A)(iii)'s consent exception, [the defendant] must demonstrate that it had the consent of [the plaintiff], as defined by the common law, to call No. 8626.").  Consent may be obtained from current subscriber or his agent,[12] *Osorio*, 746 F.3d at 1251, 1253-54, and is deemed to be given if the cell phone number is provided to the creditor by the consumer in connection with an existing debt.  23 FCC Rcd. at 564; *see Osorio*, 746 F.3d at 1247 (provision of cell phone number in connection with credit card debt could constitute prior express consent); *Sartori v. Susan C. Little & Associates, P.A.*, 571 Fed. App'x 677, 683 (10th Cir. 2014) (consumer's provision of his cell phone number to the creditor because it was unable to reach him at the prior number listed on the account

---

[12] *Osorio* had no occasion to decide whether the primary user who is not also the subscriber could provide consent.

constituted the "prior express consent"). Consent can be revoked, either orally or in writing. *Osorio*, 746 F.3d at 1255.

Plaintiff argues that Defendants cannot meet their burden of demonstrating they had his consent because they have no documentation of Plaintiff providing consent and no evidence that he provided verbal consent. CFIRM has submitted evidence from which it is fair to infer that Plaintiff provided his cell phone number to it, as the creditor, in connection with his timeshare account. CFIRM produced call logs from December 2004 which reflect that a male individual contacted CFIRM on December 2, 2004 regarding changing the name on Plaintiff's timeshare account. Also in the record is a fax from Plaintiff to the "name change representative" (Dkt. 46-3 at 29) and a letter from Plaintiff enclosing the deed transferring ownership to him (*Id.* at 30). The call logs include notes referring to what appears to be the fax from Plaintiff and calls from a male individual regarding the status of the name change on the account and wanting to know whether his information is in the system (Dkt. 46-1 at 15).

From this evidence, it is reasonable to infer that the male caller identified in the call logs is Plaintiff. The call logs also contain Plaintiff's cell phone number, which Plaintiff does not dispute. However, he suggests that CFIRM somehow acquired his cell phone number from an "unverified source" (Dkt. 43 at 2). He does not provide any evidence to substantiate this suggestion. Nor does Plaintiff provide evidence of any other way CFIRM would have obtained his cell phone number except from him. Rather, to negate CFIRM's evidence, he submits his own affidavit in which he states that he never provided Defendants with his cell phone number (Dkt. 43-1, ¶ 11-15). As noted previously, Plaintiff's deposition testimony was that he could not recall whether he did or not. Nevertheless, CFIRM has the burden of proving prior express consent. Although just barely, based

11

on the record evidence viewed in the light most favorable to Plaintiff and drawing inferences in his favor, whether Plaintiff provided prior express consent is a disputed issue of material fact precluding summary judgment.

Even if Plaintiff consented to CFIRM's calls, CFIRM is still not entitled to summary judgment because there is an issue of material fact as to whether and when he revoked whatever consent CFIRM might have had.  Plaintiff says he told CFIRM at least five times to stop calling him.  CFIRM says he did no such thing.  As such, the question of whether Plaintiff revoked whatever consent CFIRM might have had should proceed to a jury.  *See Osario*, 746 F.3d at 1256.

### D.    Vicarious and Individual Liability of All Defendants

Defendants contend that they are not liable for the acts of another defendant where it is clear that only CFIRM made to calls to Plaintiff because direct liability under the TCPA can only be imposed against the entity that made the call.  In addition, Defendants contend that direct liability is the only TCPA theory of liability alleged in the Amended Complaint.  Plaintiff contends that the four non-calling Defendants may be held vicariously liable for CFIRM's actions. He does not address Defendants' arguments that only direct liability is available and that he has failed to plead a theory of vicarious liability.

It is undisputed that CFIRM made the subject calls.  Other than a footnote in the Amended Complaint alleging that "Defendants are believed to be closely related corporate entities, all of which are either controlled or otherwise entwined with Central Florida Investments, Inc.," (Dkt. 15 at 1 n.1), the Amended Complaint alleges no facts to suggest any sort of agency relationship between or among any of the Defendants.  However, the Eleventh Circuit's recent decision in *Palm Beach Golf Center-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, No. 13-14013, 2015 WL 1004234 (11th Cir. Mar.

12

9, 2015) excuses Plaintiff's failure to specifically plead a theory of vicarious liability.  In that case, the court held that Florida's heightened pleading standards do not apply to state law claims in federal court. *Id.* at *1 n.4, *10.  It found that the district court erred in dismissing the plaintiff's conversion claim because it failed to satisfy Florida's heightened pleading standard.  *Id.* at *10-11.

All that is required under Federal Rule of Civil Procedure 8's liberal pleading standard is "a short and plain statement of the claim showing that [the plaintiff] was entitled to relief, sufficient to give fair notice to [the defendant] of what the claim was and the grounds upon which it rested." *Id.* at *11 (internal citations and quotations omitted).  It was enough that the complaint in *Palm Beach Golf Center-Boca, Inc.* alleged that the defendant's "sending of 'unsolicited faxes . . . permanently misappropriated Plaintiff's fax machine, toner, paper, and employee time to Defendant's own use." *Id.* (internal quotations omitted).[13]  Similarly here, Plaintiff alleges that "Defendants contacted Plaintiff's cell phone without express permission, with an automated telephone dialing system" (Dkt. 15, ¶ 10).  Under  *Palm Beach Golf Center-Boca, Inc.*, that is enough.

In response to Defendants' motion, Plaintiff argues that the non-calling Defendants may be held vicariously liable for the calls placed by CFIRM.  Plaintiff cites various cases dealing with agency relationships and makes conclusory statements parroting statements of law.  Plaintiff does not, however, cite any record evidence to support these statements.[14]  Defendants, as the moving party,

---

[13] The court did not address the district court's conclusion that the plaintiff failed to plead vicarious liability with respect to its TCPA claim because it found that "a plaintiff may prevail under a theory of direct liability against the entity 'on whose behalf' an unsolicited fax advertisement is sent." *Palm Beach Golf Ctr.-Boca, Inc.*, 2015 WL 1004234, at *7. However, the court indicated that its holding with respect to conversion claim would equally apply. *Id.* at *1 n.4 ("As discussed infra II.C.2., pleading requirements in federal court are governed by Federal Rule of Civil Procedure 8(a)(2).").  Indeed, the TCPA claim would have been subject to federal pleading requirements as it is a federal statutory claim.

[14] Plaintiff was directed to refile his response inserting citations to record evidence (Dkt. 56).  Even after this directive, Plaintiff cites to no evidence in support of this argument.  To the extent he makes factual statements at page 2 of his response about the relationship of Defendants (*see* Dkt. 57 at 2), many of them are not actually

bear the initial burden to show that there are no genuine issues of material fact that should be decided at trial. They have met their burden of demonstrating that the non-calling Defendants are not directly liable by showing that only CFIRM placed the calls at issue.  Plaintiff does not dispute this.  And, he has wholly failed to demonstrate that there is a material issue of fact as to any theory of vicarious liablity.  As such, Defendants CFI, Westgate, Westgate Villas, and Westgate HOA are entitled to summary judgment.  *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).[15]

As to Plaintiff's motion on this issue, the conclusory allegations in it are not supported by any facts (*see* Dkt. 43 at 3, 5-6).  And the purported undisputed facts relevant to this issue in his statement of undisputed facts are not supported by the actual evidence.  Again, Plaintiff has failed to establish the existence of the essential elements of a vicarious liability claim. *See Cleveland*, 526 U.S. at 805-06.

Accordingly,

1. Plaintiff's Motion for Summary Judgment and Supporting Memorandum of Law (Dkt. 43) is **DENIED**.

2. Defendants' Motion for Summary Judgment (Dkt. 45) is **GRANTED** *in part* as to Defendants Central Florida Investments, Inc., Westgate Resorts, LTD., Westgate Vacation Villas, LLC, and Westgate Vacation Villas Owners Association, Inc.  Defendants' Motion is **DENIED** in all other respects.

---

supported by the evidence and in any event it is not clear how they establish an agency relationship such that vicarious liability could be imposed.

[15] *See also Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 805-06, 119 S. Ct. 1597, 1603, 143 L. Ed. 2d 966 (1999) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). ("If the plaintiff fails to make a showing sufficient to establish the existence of an element essential to his case, and on which he has the burden of proof at trial, summary judgment for the defendant is appropriate.").

3.    The Clerk is directed to **ENTER FINAL JUDGMENT** in favor of Defendants Central Florida Investments, Inc., Westgate Resorts, LTD., Westgate Vacation Villas, LLC, and Westgate Vacation Villas Owners Association, Inc. and against Plaintiff Greg Soulliere.

4.    Defendants' Request for Oral Argument on Motion for Summary Judgment (Dkt. 47) is **DENIED**.

**DONE AND ORDERED** this _23rd_ day of March, 2015.

JAMES D. WHITTEMORE
United States District Judge

Copies to:
Counsel of Record

15